Exhibit A

# DEBTOR IN POSSESSION FINANCING AMENDMENT AND SECOND AMENDMENT TO AMENDED AND RESTATED CREDIT AGREEMENT

THIS DEBTOR IN POSSESSION FINANCING AMENDMENT AND SECOND AMENDMENT TO AMENDED AND RESTATED CREDIT AGREEMENT (this "**Second Amendment**") is dated as of February __, 2010, and entered into among AGE Refining, Inc., a Texas corporation (the "**Borrower**"), JPMorgan Chase Bank, N.A., a national banking association (the "**Lender**") and as Issuing Bank under and as defined in the hereinafter described Credit Agreement, and JPMorgan Chase Bank, N.A., as administrative agent (in such capacity, the "**Administrative Agent**") for itself and any future lenders.

WITNESSETH:

WHEREAS, the Borrower, the Lender and the Administrative Agent are parties to that certain Amended and Restated Credit Agreement dated as of September 12, 2008, as amended by that certain First Amendment to Amended and Restated Credit and Security Agreement, Limited Consent and Waiver dated March 26, 2009 (the "**First Amendment**") (as further amended, restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**");

WHEREAS, pursuant to the terms of the Credit Agreement, the Lender made loans and granted other financial accommodations, including but not limited to the issuance of letters of credit, to the Borrower, which loans and other financial accommodations are secured by a lien upon (i) substantially all of the personal property of the Borrower and (ii) the ownership interests of Albert Gonzalez, Albert Glen Gonzalez, and the Glen Gonzalez Special Trust in the Borrower;

WHEREAS, the Borrower filed a voluntary petition for relief under Chapter 11, Title 11, United States Code, on [_____], in the United States Bankruptcy Court for the Western District of Texas (the "**Case**");

WHEREAS, the Borrower has insufficient unencumbered cash or liquid assets with which to operate its business;

WHEREAS, the Borrower is unable to obtain credit on an unsecured basis or as an administrative expense pursuant to 11 U.S.C §§ 364(a) and (b), and 503(b)(1);

WHEREAS, an immediate need exists for the Borrower to obtain funds to continue operation of its business;

WHEREAS, the Lender has agreed to extend additional credit to the Borrower up to an amount not to exceed $[35,000,000] (the "**DIP Facility**") for Budgeted Expenses (as defined below) from the Second Amendment Effective Date (as defined below) until the earlier of (a) notice of the occurrence of a Postpetition Default (as defined below) or (b) [_____];

WHEREAS, the Lender has agreed to grant the request of the Borrower to extend such additional credit, but only upon the terms and conditions set forth in this Second Amendment and the Financing Order (as defined below); and

WHEREAS, the Borrower has agreed to secure its obligations to the Administrative Agent and the Lender in connection with such additional credit with, among other things, a first priority perfected security interest in substantially all of its existing and future personal property and a second priority perfected security interest in the Term Loan Priority Collateral (as hereinafter defined), as set forth in the Financing Order.

NOW, THEREFORE, for valuable consideration hereby acknowledged, the parties hereto agree as follows:

Section 1 **Definitions**. Unless specifically defined or redefined below, capitalized terms used herein shall have the meanings ascribed thereto in the Credit Agreement.

Section 2 **Amendments to Credit Agreement**. Subject to the terms and conditions hereof, the provisions of the Credit Agreement enumerated below are amended as follows:

(a) Effective as of the date hereof, the following definitions set forth in Section 1.02 of the Credit Agreement are hereby amended to read in full as follows:

"**Collateral**" means any and all property owned, leased or operated by a Person covered by the Collateral Documents, the DIP Collateral and any and all other property of any Loan Party, now existing or hereafter acquired, that may at any time be or become subject to a security interest or Lien in favor of the Administrative Agent, on behalf of itself and the Lenders, to secure the Secured Obligations.

"**Loans**" means each and all of (a) the loans and advances made by the Lenders pursuant to this Agreement, including Protective Advances, and (b) the Postpetition Loans.

(b) Effective as of the date hereof, the following definitions are hereby added to Section 1.02 of the Credit Agreement:

"**Bankruptcy Code**" means 11 U.S.C. § 101 et seq.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Western District of Texas or any other court with competent jurisdiction over the Case.

"**Budget**" means the [__]-week cash budget detailing the Borrower's anticipated cash receipts and expenditures from the week ending [_____], 2010, until [_____], 2010, as amended or supplemented from time to time, which budget (and any amendments thereto) shall be in form and substance acceptable to the Administrative Agent and shall be incorporated into the Financing Order and attached hereto as Exhibit D. Changes to the Budget are subject to the prior written approval of the Administrative Agent in its Permitted Discretion.

70784135.1

"**Budgeted Expenses**" means expenses permitted to be paid by the Borrower for the purposes set forth in the Budget.

"**Case**" means the Chapter 11 bankruptcy case of the Borrower pending before the Bankruptcy Court entitled ["In re AGE Refining, Inc.", Case No. _____], including adversary proceedings or other ancillary proceedings.

"**Cash Collateral**" means cash collateral, as such term is defined in Section 363(a) of the Bankruptcy Code and as defined in the Financing Order, arising from or relating to Collateral granted to the Administrative Agent for the benefit of the Lenders.

"**Cash Collateral Order**" has the meaning specified in Section 3(i) of the Second Amendment.

"**DIP Collateral**" means, subject to the Intercreditor Agreement, any and all of the properties and assets of the Borrower and the Borrower's bankruptcy estate, both real and personal, including, without limitation, all cash, accounts, inventory, equipment, general intangibles, intellectual property of all kinds including patents, trademarks, trade names, service marks and copyrights, securities, instruments, investment property, deposit accounts, chattel paper, warehouse receipts, bills of lading, tax refunds of any nature, insurance proceeds, insurance premium refunds, deposits of any kind, security deposits, utility deposits, bonds and proceeds of same, causes of action (whether by contract or tort, common law or statutory, equitable or otherwise), oil and gas interests, leasehold interests in real estate or personal property and customer lists, whether acquired before or after the Petition Date, whether now owned and existing or hereafter acquired, created, or arising, and all products, proceeds, rents, revenues, and profits thereof (including, without limitation, claims of the Borrower against third parties for loss or damage to such property), and all accessions thereto, substitutions and replacements therefor, and wherever located, in which the Administrative Agent, for the benefit of the Lenders, is granted a lien or security interest to secure the Postpetition Obligations as set forth in the Financing Order.

"**Final Order**" has the meaning specified in Section 3(d) of the Second Amendment.

"**Financing Order**" means the one or more orders of the Bankruptcy Court authorizing and approving, on either an interim or final basis, the financing contemplated by the Second Amendment and use of Cash Collateral, each in form and substance satisfactory to the Lenders.

"**Petition Date**" means February [__], 2010.

"**Postpetition Aggregate Commitments**" means $[35,000,000], being the aggregate amount of the Postpetition Commitments of the Lenders on the Second Amendment Effective Date, as the same may be reduced from time to time.

"**Postpetition Commitment**" means the commitment of any Lender to make Postpetition Loans and cause the Issuing Bank to issue Postpetition Letters of Credit as set forth in Section 2.01 hereof up to the amount for such Lender set forth on Exhibit B to the Second Amendment.

"**Postpetition Default**" means the occurrence and continuance of any of the following events:

(a)     The Borrower shall fail to pay any principal of the Postpetition Loans when the same becomes due and payable;

(b)     The Borrower shall fail to pay any interest on the Postpetition Loans or any fee or other amount due with respect to the Postpetition Obligations after such interest, fee, or other amount becomes due and payable;

(c)     The Borrower shall fail to obtain the Final Order from the Bankruptcy Court by [_____];

(d)     Any representation or warranty made by the Borrower in the Second Amendment or in any statement or certificate given after the Second Amendment Effective Date by the Borrower in writing pursuant to any Loan Document or in connection with any Loan Document shall be false in any material respect on the date as of which made;

(e)     The Borrower shall breach or violate any term, covenant or agreement contained in the Second Amendment, Articles V, VI, or VII of this Agreement (other than as set forth on Exhibit C attached to the Second Amendment), or any of the other Loan Documents;

(f)     An Event of Default shall occur under and as defined in the Financing Order;

(g)     The Case shall be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code; or a Chapter 11 trustee or an examiner with expanded power shall be appointed in the Case without the express written consent of the Administrative Agent;

(h)     Any security interest, lien, claim or encumbrance, excluding the Liens permitted pursuant to Section 6.02 hereof, shall be granted in any of the DIP Collateral which is pari passu with or senior to the claims of the Lenders therein, including any surcharge of the DIP Collateral (other than the Term Loan Priority Collateral) pursuant to Bankruptcy Code § 506(c) or otherwise without the express written consent of the Administrative Agent;

(i) The Borrower shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any prepetition Indebtedness, except to the Lenders, unless approved by the Administrative Agent in writing or as authorized by the Bankruptcy Court after notice and hearing;

(j) The Borrower shall declare or make, or agree to pay or make, directly or indirectly, any Restricted Payment;

(k) The Bankruptcy Court shall enter an order granting relief from the automatic stay to the holder or holders of any other security interest or lien (other than the Lenders) in any DIP Collateral to permit the pursuit of any judicial or non-judicial transfer or other remedy against any assets of the Borrower without the express written consent of the Administrative Agent;

(l) Any provision of the documents relating to the Postpetition Loans shall cease to be valid and binding on the Borrower, or the Borrower shall so assert in any pleading filed in any court;

(m) The Borrower shall for any reason fail to remit to the Administrative Agent all net proceeds from the sale, disposition, collection, or other realization upon the Collateral or the DIP Collateral for application in accordance with Section 2.09(h);

(n) The Borrower shall attempt to vacate or modify either the Financing Order or the Cash Collateral Order over the objection of the Administrative Agent;

(o) The entry of an order pursuant to Bankruptcy Code § 363 approving the sale of a material portion of the Borrower's assets without the prior written consent of the Administrative Agent and the Lenders to such sale;

(p) Actual performance shall at any time adversely deviate from the Budget by [__] % or more calculated on a line item by line item basis and measured weekly on a rolling 4 week basis from the Petition Date; provided that a weekly variance which does not exceed $[_____] in the aggregate shall not create a Forbearance Default as long as the variance for any 4 consecutive weeks does not exceed $[_____] in the aggregate;

(q) The Borrower shall fail to obtain, on or before April 1, 2010, renewals or replacements of all existing contracts with the United States government or a department or agency thereof for the sale of not less than 36 million gallons of jet fuel for the service year beginning April 1, 2010 and ending March 31, 2011;

70784135.1

(r)     The Borrower shall fail to retain Muse Stancil & Co. as the project manager for the replacement of the ULSD steam turbine generator on terms and conditions satisfactory to the Lenders on or before [_____].

"**Postpetition Letters of Credit**" means any Letter of Credit issued, renewed or extended by the Issuing Bank for the benefit of the Borrower pursuant to the Postpetition Commitments which together with the Postpetition Loans, are in an aggregate amount not to exceed at any time the Postpetition Aggregate Commitments then in effect.

"**Postpetition Loans**" means advances by the Lenders to the Borrower pursuant to the Postpetition Commitments which together with the Postpetition Letters of Credit, are in an aggregate amount not to exceed at any time the Postpetition Aggregate Commitments then in effect.

"**Postpetition Obligations**" means all present and future obligations, indebtedness and other liabilities of the Borrower arising with respect to the Financing Order, the Postpetition Loans or the Postpetition Letters of Credit, including without limitation the principal amount thereof, and any interest, fees, and charges related thereto or in connection therewith, and any and all renewals, extensions, rearrangements, and refundings of the foregoing.

"**Postpetition Termination Date**" means the earliest of (a) [_____], 2010 at 5:00 p.m. Central Time, (b) the date the Borrower terminates the commitment of the Lenders to make Postpetition Loans and cause the Issuing Bank to issue Postpetition Letters of Credit, (c) the date the Administrative Agent terminates the commitment of the Lenders to make Postpetition Loans and cause the Issuing Bank to issue Postpetition Letters of Credit upon the occurrence of a Postpetition Default, (d) the effective date of a confirmed plan of reorganization for the Borrower, or (e) the date on which the Bankruptcy Court approves the extension of any other credit facilities to the Borrower.

"**Prepetition Obligations**" means all Secured Obligations other than the Postpetition Obligations.

"**Second Amendment**" means that certain Second Amendment to Amended and Restated Credit Agreement dated as of February [__], 2010 among the Borrower, the Administrative Agent and the sole Lender.

"**Second Amendment Effective Date**" means February [__], 2010.

"**Superpriority Claim**" means a claim against the Borrower in the Case which is an administrative expense claim having priority over any and all

administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code.

"**Term Loan Priority Collateral**" has the meaning assigned to such term in the Intercreditor Agreement.

(c)     Effective as of the Second Amendment Effective Date, Article 2 of the Credit Agreement is amended to add thereto the following Section 2.21:

SECTION 2.21.     Postpetition Loans.

(a)     Commitment for Postpetition Loans and Postpetition Letters of Credit. From and after the Petition Date, the Lenders shall have no obligation to make any new Loans or issue, renew or extend any Letters of Credit to the Borrower.  Notwithstanding the foregoing, subject to the terms and conditions contained in this Section 2.21, the Lenders agree to make Postpetition Loans and cause the Issuing Bank to issue Postpetition Letters of Credit for the account of the Borrower from time to time, but not more frequently than [_____], from the Second Amendment Effective Date until the Postpetition Termination Date, in accordance with their Postpetition Commitments and in an aggregate amount not to exceed at any time outstanding the lesser of (a) the Postpetition Aggregate Commitments and (b) the Borrowing Base minus the amount of the Prepetition Obligations. Each Postpetition Loan may be prepaid at any time without premium or penalty and may be borrowed, repaid, and reborrowed subject to the terms and conditions of this Agreement.

(b)     Borrowing Mechanics for Postpetition Loans.  Each Postpetition Loan shall be made on notice given by the Borrower to the Administrative Agent not later than 11:00 a.m. Central Time on the Business Day prior to the date of the proposed Postpetition Loan. Each such notice (a "**Postpetition Notice of Borrowing**") shall be in substantially the form of Exhibit A to the Second Amendment specifying therein (i) the proposed funding date, (ii) the aggregate amount of such proposed Postpetition Loan, and (iii) that the proposed use of the proceeds thereof is for Budgeted Expenses in compliance with the Budget and no other cash is available to the Borrower to pay such Budgeted Expenses. Administrative Agent may condition the disbursement of Postpetition Loans on receipt of such documentation as it shall require to evidence that the proceeds of such Postpetition Loans shall be used in accordance with the Budget both as to amount of such Postpetition Loans and as to the timing of such Postpetition Loans.

70784135.1

(c)    Borrowing Mechanics for Postpetition Letters of Credit. Each issuance, amendment, renewal or extension of a Postpetition Letter of Credit shall be made on notice given by the Borrower to the Issuing Bank and the Administrative Agent not later than 11:00 a.m. Central Time at least three Business Days prior to the requested date of the issuance, amendment, renewal or extension of the Postpetition Letter of Credit. Each such notice (a "**Postpetition Notice of Issuance**") shall specify (i) the proposed date of issuance, amendment, renewal or extension (which shall be a Business Day), (ii) the date on which the proposed Postpetition Letter of Credit is to expire (which shall not be later than the Postpetition Termination Date), (iii) the aggregate amount of such proposed Postpetition Letter of Credit, and (iv) the name and address of the beneficiary thereof and such other information as shall be necessary to prepare, amend, renew or extend such Postpetition Letter of Credit. If requested by the Issuing Bank, the Borrower shall also submit a letter of credit application on the Issuing Bank's standard form in connection with any request for a Postpetition Letter of Credit.

(d)    Conditions Precedent to Each Postpetition Loan or any Postpetition Letter of Credit. The obligation of the Lenders to make any Postpetition Loan (including the initial Postpetition Loan) or cause any Postpetition Letter of Credit to be issued, amended, renewed or extended shall be subject to the following conditions precedent: (i) the Borrower shall deliver to the Administrative Agent an executed Postpetition Notice of Borrowing or Postpetition Notice of Issuance, as the case may be, pursuant to Section 2.21 hereto, (ii) no event has occurred and is continuing which constitutes a Postpetition Default or which would constitute a Postpetition Default but for the requirement that notice be given or time elapsed or both; (iii) the Borrower shall deliver to the Administrative Agent a certificate of the chief financial officer of the Borrower certifying that (A) all representations and warranties made by the Borrower in the Second Amendment or in any statement or certificate after the Second Amendment Effective Date by the Borrower in writing pursuant to any Loan Document or in connection with any Loan Document shall be true and correct and, (B) with respect to Postpetition Loans, the Borrower shall apply the proceeds of the Postpetition Loan only to Budgeted Expenses; (iv) with respect to the initial Postpetition Loan, the Administrative Agent shall have received such other approvals or documents as the Lenders may reasonably request; (v) no Bankruptcy Court order has been entered authorizing the Borrower to obtain financing or credit pursuant to Section 364 of the Bankruptcy Code from any Person other than the Lenders secured by a security interest or having the

priority of an administrative claim unless otherwise consented to by the Administrative Agent in writing; (vi) the Financing Order shall not have been vacated, reversed, modified, or amended and, in the event that such order is the subject of any pending appeal, no performance of any obligation of any party hereto shall have been stayed pending appeal; (vii) the Administrative Agent shall have received payment for all reasonable professional fees incurred by the Administrative Agent and the Lenders with respect to the Postpetition Loans or Postpetition Letters of Credit; (viii) after giving effect to the Postpetition Loan requested or Postpetition Letter of Credit issued, amended, renewed or extended, the total amount of the Postpetition Loans and the Postpetition Letters of Credit shall not exceed the Postpetition Aggregate Commitment; and (ix) the Borrower shall have proposed a plan of reorganization in the Case that is acceptable to the Administrative Agent and the Lenders no later than [_____], 2010. In no event shall the Lenders be requested to advance any funds or extend any credit other than for Budgeted Expenses actually incurred and payable either at the time of such advance or within one week thereafter.

(e)     Repayment. The Borrower shall repay the entire unpaid principal amount of the Postpetition Loans, together with all accrued and unpaid interest thereon, and provide cash collateral for any uncaptured Letters of Credit, including Postpetition Letters of Credit, on the earlier of the Postpetition Termination Date or the date on which the Bankruptcy Court approves the extension of any other credit facilities to the Borrower.

(f)     Interest. The Borrower shall pay interest on the unpaid principal amount of each Postpetition Loan from the date advanced until the principal amount thereof shall have been paid in full at a rate per annum equal at all times to the Adjusted LIBO Rate in effect from time to time plus 5.50%, payable monthly in arrears on the first Business Day of each month, and on the Postpetition Termination Date; provided however that all principal outstanding after the occurrence of a Postpetition Default shall bear interest, from the date of such Postpetition Default until the date on which such amount is due until such amount is paid in full or such Postpetition Default is waived or cured, payable on demand, at the Alternate Base Rate in effect from time to time plus 7.50% per annum.

(g)     Commitment Fee. The Borrower agrees to pay to the Administrative Agent for the account of each Lender a commitment fee of .75% on the average daily amount of the unused amount of the Postpetition Commitment of such Lender

during the period from and including the date of the Petition Date to but excluding the Postpetition Termination Date. Accrued commitment fees shall be payable in arrears on the last day of each month and on the Postpetition Termination Date, commencing on the first such date to occur after the Petition Date. All commitment fees shall be computed on the basis of a year of 360 days, unless such computation would exceed the Highest Lawful Rate, in which case interest shall be computed on the basis of a year of 365 days (or 366 days in a leap year), and shall be payable for the actual number of days elapsed (including the first day but excluding the last day).

(h) <u>Letter of Credit Fee</u>. The Borrower agrees to pay to the Administrative Agent for the account of each Lender a participation fee with respect to Letters of Credit, at a per annum rate equal to 5.50% payable monthly in arrears on the last day of each month and on the Postpetition Termination Date.

(i) <u>Grant of Security Interest</u>. As security for the prompt payment and performance when due (whether at stated maturity, by acceleration or otherwise) of all the Postpetition Obligations and to induce the Lenders to make the Postpetition Loans in accordance with the terms hereof, the Borrower shall, pursuant to the Financing Order, and does hereby, assign, convey, mortgage, pledge, hypothecate and grant to the Administrative Agent, for the benefit of the Lenders, a first priority perfected security interest in the DIP Collateral, in each case subject to Prior Liens (as defined in the Financing Order) and to agreed upon carve-outs for the Borrower's professionals and the creditor committee's professionals and certain fees and expenses payable to the United States Trustee and the Clerk of the Bankruptcy Court as more fully set forth in the Financing Order. Furthermore, in the event any unapplied remaining retainer funds paid to any of the Borrower's Bankruptcy Court approved professionals are returned to the Borrower, such returned unapplied remaining retainer funds shall be considered Cash Collateral. No cost or surcharge shall be imposed against the DIP Collateral or the Collateral under Section 506(c) of the Code.

(j) <u>Application of Sale Proceeds and Collections</u>. Notwithstanding anything to the contrary contained in this Agreement, from and after the Second Amendment Effective Date and so long as no Postpetition Default has occurred and is continuing, all net proceeds received from the sale, disposition, collection or other realization upon the Collateral or the DIP Collateral (other than the Term Loan Priority Collateral) shall be applied (a) first, to payment of all fees, including attorneys fees, and expenses

incurred by the Administrative Agent and the Lenders under the Credit Agreement or the Second Amendment, (b) second, to payment of the Postpetition Obligations plus any fees and accrued interest thereon, and (c) third, to payment of the Prepetition Obligations plus any accrued interest thereon, in accordance with the Intercreditor Agreement, each as determined by the Administrative Agent in its sole and absolute discretion, until such time as all Indebtedness of the Borrower to the Administrative Agent and the Lenders is satisfied in full, and then to the Borrower.

(k)     <u>Postpetition Default</u>.   Upon the occurrence and during the continuance of any Postpetition Default, the Administrative Agent (at the request of the Lenders) may, by written notice to the Borrower, declare all or any portion of the Postpetition Obligations to be, and the same shall forthwith become, due and payable, together with accrued interest thereon, and the obligation of the Lenders to make any further Postpetition Loans and issue further Postpetition Letters of Credit shall thereupon terminate. After the occurrence and during the continuance of any Postpetition Default, all net proceeds received from the sale, disposition, collection or other realization upon the Collateral or the DIP Collateral (other than Term Loan Priority Collateral) shall be applied to such Prepetition Obligations and Postpetition Obligations as may be determined by the Administrative Agent in its sole and absolute discretion.

(d)     Effective as of the date hereof, Article V of the Credit Agreement is hereby amended to add thereto the following sections:

SECTION 5.14.      <u>Budget</u>.   The Borrower shall operate strictly in accordance with the Budget attached hereto as <u>Exhibit D</u>, shall have cash receipts equaling at least [_____]% of the cash receipts reflected on the Budget from time to time as measured weekly on a rolling 4-week basis, and shall pay only those actual, ordinary and necessary operating expenses of the Borrower's business in compliance with and not to exceed by more than [_____]% those expenses on a line item basis listed on the Budget as measured weekly on a rolling 4-week basis, as the Budget may be modified in writing with the prior written consent of the Administrative Agent[; provided that a weekly variance which does not exceed $[_____] in the aggregate shall not constitute a breach of this Section 5.14 as long as the variance for any 4 consecutive weeks does not exceed $[_____] in the aggregate.]

SECTION 5.15.      <u>Reports</u>. The Borrower shall furnish the following:

(a)     Not later than the close of business on Wednesday of each week, the Borrower will provide the Administrative Agent with a variance

report showing (A) actual receipts and expenses for the preceding week as compared to those contemplated by the Budget, and (B) aggregate actual receipts and expenses for the period from the Petition Date through the end of the preceding week as compared to the Budget for the same period.

(b)     No later than 15 days after the Second Amendment Effective Date, the Borrower will provide the Administrative Agent with a report from the CRO setting forth the results of an analysis by the CRO of whether the terms and pricing of the Borrower's existing business arrangement with AGE Transportation, Inc. ("**ATI**") are not less favorable to the Borrower than could be obtained on an arm's-length basis from unrelated third parties.

(c)     On the Second Amendment Effective Date the Borrower will provide the Administrative Agent with an updated detailed budget and project plan for the replacement of the ULSD steam turbine generator (the "**STG Replacement**") showing final completion of the STG Replacement by no later than March 31, 2010, and the Borrower will deliver to the Administrative Agent any additional updated budgets and project plans immediately upon receipt or creation thereof by the Borrower.

(d)     Such other reports that the Administrative Agent or any Lender may request from time to time.

(e)     The Borrower will provide or cause to be provided to the Administrative Agent and the Lenders telephonic and/or written weekly reports (including operating metrics) by the Borrower as may be requested by the Administrative Agent.

(e)     Effective as of the date hereof, Article VI of the Credit Agreement is hereby amended to add thereto the following section:

SECTION 6.15.     Chapter 11 Claims.  The Borrower shall not incur, create, assume, suffer to exist, or permit any claim in the Case (including without limitation any claim under Section 506(c) of the Bankruptcy Code and any deficiency claim remaining after the satisfaction of a Lien that secures a claim) to be on a parity with or senior to the claims of the Administrative Agent for the benefit of the Lenders against the Borrower hereunder, or apply to the Bankruptcy Court for authority to do so.  The Borrower shall not pay fees and expenses to any Bankruptcy Court-approved professional until such Bankruptcy Court-approved professional is authorized to be paid pursuant to any fee procedure approved by the Bankruptcy Court.

70784135.1

Section 3    Conditions Precedent.  This Second Amendment shall not be effective until all corporate actions of the Borrower taken in connection herewith and the transactions contemplated hereby shall be satisfactory in form and substance to Administrative Agent, and each of the following conditions precedent shall have been satisfied:

(a)    The Administrative Agent shall have received each of the following, in form and substance satisfactory to the Administrative Agent and the Administrative Agent's counsel, in their sole and absolute discretion:

(i)    a certificate of a chief executive officer of Borrower certifying that (A) all representations and warranties in this Second Amendment are true and correct in all material respects, and (B) there exists no Postpetition Default after giving effect to this Second Amendment and the borrowings contemplated hereby; and

(ii)    such other documents, instruments, and certificates as the Administrative Agent shall deem necessary or appropriate in connection with this Second Amendment and the transactions contemplated hereby.

(b)    The Administrative Agent shall have received a counterpart of this Second Amendment duly executed and delivered by a duly authorized officer of the Borrower and the Administrative Agent.

(c)    All governmental and third party approvals necessary in connection with the financing contemplated hereby and the continuing operations of the Borrower (including shareholder approvals, if any) shall have been obtained on satisfactory terms and shall be in full force and effect.

(d)    The Bankruptcy Court's entry of an interim order (the "**Interim Order**") approving the DIP Facility and other arrangements described herein, in form and substance acceptable to the Administrative Agent, which order may allow funding of only a limited amount pending entry of an order approving the DIP Facility on a final basis, in form and substance acceptable to the Administrative Agent (such final order being referred to herein as the "**Final Order**"), and entry of the Final Order.

(e)    The Bankruptcy Court's entry of a cash collateral order (the "**Cash Collateral Order**") in form and substance satisfactory to the Administrative Agent, which order may be included and part of the Interim Order and the Final Order.

(f)    The Administrative Agent shall have received the Budget which shall be in a form and substance acceptable to the Administrative Agent.

(g)    The Administrative Agent shall have received satisfactory evidence of the Borrower's engagement of an acting Chief Restructuring Officer (the "**CRO**") upon terms and conditions agreed among the Borrower and the CRO**,** which shall include a grant of authority by the Borrower and its board of directors of such CRO to:

(i)     develop and implement the Budget, including the review and determination of underlying assumptions, including near term and projected margin outlook, and operating expense (Processing and G&A) and capital budgets;

(ii)    develop and implement cost reduction plans, including the determination and setting of staffing levels;

(iii)   identify and implement revenue enhancement opportunities (i.e., gasoline, product mix) and optimal crude supply strategies;

(iv)    implement the foregoing in a manner consistent with the CRO's reasonable business judgment without prior consultation with the Borrower's board of directors; and

(v)     communicate directly with the Administrative Agent and deliver to the Administrative Agent all information, reports and presentation materials prepared by the CRO.

(h)     The Administrative Agent shall have received a report from the Borrower describing in detail the Borrower's relationship and business transactions with Tierra Pipeline, LLC, Tierra G Squared Land and Properties GP, LLC, any of Borrower's Affiliates or any Affiliates of any of Borrower's shareholders.

(i)     The Administrative Agent shall be satisfied in its sole discretion that ATI will continue to provide the same services to the Borrower that ATI has historically provided for at least 30 days after the date hereof on written terms and conditions satisfactory to the Lenders.

(j)     The Administrative Agent and the CRO shall have been granted access to inspect the books and records of ATI and each other Affiliate of the Borrower.

(k)     The Administrative Agent shall have been reimbursed for all reasonable fees and expenses incurred by the Administrative Agent, and the Lender shall have received an upfront fee of 3% of the amount of its Postpetition Commitment.

Section 4     <u>Representations and Warranties; Ratifications</u>.  The Borrower represents and warrants to the Administrative Agent and the Lender that (a) this Second Amendment constitutes its legal, valid, and binding obligations, enforceable in accordance with the terms hereof (subject as to enforcement of remedies to any applicable bankruptcy, reorganization, moratorium, or other laws or principles of equity affecting the enforcement of creditors' rights generally), (b) the Credit Agreement, as amended hereby, and the other Loan Documents remain in full force and effect, and (c) other than as disclosed on <u>Exhibit C</u>, there exists no Event of Default under the Credit Agreement after giving effect to this Second Amendment.  Except as expressly modified by this Second Amendment, the terms and provisions of the Credit Agreement and the other Loan Documents are ratified and confirmed and shall continue in full force and effect.  Except as provided herein, this Second Amendment shall not constitute an amendment or waiver of any terms and provisions of the Credit Agreement and other Loan Documents nor a waiver of the rights of the Administrative Agent and the Lender to insist upon

compliance with each term, covenant, condition, or provision of the Credit Agreement and other Loan Documents.

Section 5    Further Assurances.  The Borrower shall execute and deliver such further agreements, documents, instruments, and certificates in form and substance satisfactory to the Administrative Agent, as the Administrative Agent or the Lender may deem necessary or appropriate in connection with this Second Amendment.

Section 6    Counterparts.  This Second Amendment and the other Loan Documents may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument; in making proof of any such agreement, it shall not be necessary to produce or account for any counterpart other than one signed by the party against which enforcement is sought.  Signatures delivered by fax and pdf (email) shall be binding and effective as originals.

Section 7    Expenses.  The Borrower agrees to pay all costs and expenses of the Administrative Agent including, without limitation, those contemplated under Section 2.11 of the Credit Agreement and any other Loan Document, and expressly including fees, charges and expenses of Fulbright& Jaworski L.L.P. and XRoads Solution Group, LLC or any other consultant for or advisor to the Administrative Agent in connection with the preparation, negotiation, execution, delivery and administration of this Second Amendment and all other instruments or documents provided for herein or delivered or to be delivered hereunder or in connection herewith (all such costs and expenses, the "**Agent's Expenses**").  In addition, the Borrower agrees to save and hold harmless the Administrative Agent and the Lender from all liability for the Agent's Expenses.  All of the Agent's Expenses constitute Postpetition Obligations under the Loan Documents.  Borrower acknowledges that it will receive a summary invoice reflecting only the total amount due and that such summary invoice will not contain any narrative description of the services provided by Fulbright & Jaworski L.L.P., XRoads Solution Group, LLC or any other consultant or advisor.  Borrower agrees that delivery of such summary invoices shall not, in any way constitute a waiver of any right or privilege of the Administrative Agent and the Lender associated with such invoices.  The Administrative Agent is authorized by the Borrower to charge the Borrower's deposit accounts with JPMorgan for any and all of the Agent's Expenses from time to time as determined by the Administrative Agent.  All obligations provided in this Section 7 shall survive any termination of this Second Amendment and the other Loan Documents.  Borrower agrees and intends that each transfer to or for the benefit of the Administrative Agent and the Lender made or to be made under this Section 7 (a) are made according to ordinary business terms between Borrower, the Administrative Agent and the Lender taking into account the Borrower's business and financial affairs and (b) are intended by the Borrower, the Administrative Agent and the Lender to be a contemporaneous exchange for new value given to the Borrower by the Administrative Agent and the Lender as set forth herein.

Section 8    Indemnification.    The Borrower hereby agrees to indemnify the Administrative Agent and the Lender from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses, or disbursements of any kind or nature whatsoever which may be imposed on, incurred by or asserted against the Administrative Agent or any Lender in any way relating to or arising out of or any action taken or omitted by the Administrative Agent or any Lender under this Second Amendment or in any way relating to the

Postpetition Loans; provided that the Borrower shall not be liable for any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses, or disbursements resulting from the Administrative Agent's or any Lender's gross negligence or willful misconduct.

Section 9    **WAIVER OF JURY TRIAL**.  TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE BORROWER HEREBY WAIVES ANY RIGHT THAT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE (WHETHER A CLAIM IN TORT, CONTRACT, EQUITY, OR OTHERWISE) ARISING UNDER OR RELATING TO THIS SECOND AMENDMENT, THE OTHER LOAN DOCUMENTS, OR ANY RELATED MATTERS, AND AGREES THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.

Section 10    **GOVERNING LAW**.  THIS SECOND AMENDMENT AND ALL LOAN DOCUMENTS SHALL BE DEEMED CONTRACTS MADE UNDER THE LAWS OF THE STATE OF TEXAS AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF TEXAS, EXCEPT TO THE EXTENT (1) FEDERAL LAWS GOVERN THE VALIDITY, CONSTRUCTION, ENFORCEMENT, AND INTERPRETATION OF ALL OR ANY PART OF THIS AGREEMENT AND ALL DOMESTIC LOAN DOCUMENTS OR (2) STATE LAW GOVERNS UCC COLLATERAL INTERESTS FOR PROPERTIES OUTSIDE THE STATE OF TEXAS.  WITHOUT EXCLUDING ANY OTHER JURISDICTION, THE BORROWER AGREES THAT BOTH THE BANKRUPTCY COURT AND THE COURTS OF TEXAS WILL HAVE JURISDICTION OVER PROCEEDINGS IN CONNECTION HEREWITH.

Section 11    **RATIFICATION**.  THE BORROWER HEREBY RATIFIES AND CONFIRMS EACH OF THE RELEASES CONTAINED IN SECTION 12 OF THE FIRST AMENDMENT.

Section 12    **ENTIRE AGREEMENT**.  THIS SECOND AMENDMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.  THIS SECOND AMENDMENT SHALL CONSTITUTE A LOAN DOCUMENT.

[Remainder of page left intentionally blank.  Signature pages follow.]

70784135.1

**BORROWER:**                                 **AGE REFINING, INC.**

By: _____

Name:_____

Title:_____

Signature Page
SECOND AMENDMENT TO AMENDED AND RESTATED CREDIT AGREEMENT
AGE REFINING, INC.

70783847

**ADMINISTRATIVE AGENT/LENDER:**    **JPMORGAN CHASE BANK, N.A.**, as Administrative Agent, Issuing Bank and sole Lender

By: _____

Name: _____

Title: _____

Signature Page
SECOND AMENDMENT TO AMENDED AND RESTATED CREDIT AGREEMENT
AGE REFINING, INC.

70783847

**EXHIBIT A**
**FORM OF POSTPETITION NOTICE OF BORROWING**


Date:_____


JP Morgan Chase Bank, N.A., as Administrative Agent
2200 Ross Avenue, 9th Floor
Dallas, Texas 75201
Attn: Mr. Courtney J. Jeans


     Re:     Request For Postpetition Loan

     This Request for Borrowing has been prepared and is being delivered to Administrative Agent pursuant to Section 2.21(b) of that certain Amended and Restated Credit Agreement by and among AGE Refining, Inc. (the "**Borrower**"), the lenders party thereto, as Lenders, and JPMorgan Chase Bank, N.A., as administrative agent ("**Administrative Agent**") for the Lenders, dated as of September 12, 2008 (as modified to date, the "**Credit Agreement**"). Capitalized terms in this document shall have the meanings assigned to them in the Credit Agreement unless otherwise provided herein or the context hereof otherwise requires.

     The Borrower hereby (i) requests that Lenders make a Postpetition Loan (i) in the aggregate principal amount of $ _____ on _____, 20__, and (ii) certifies that the proceeds of such Postpetition Loan shall be used for Budgeted Expenses in compliance with the Budget and no other cash is available to the Borrower to pay such Budgeted Expenses.

     The undersigned (in his or her representative capacity and not in his or her individual capacity) hereby represents and warrants, to the best of his or her knowledge, to the Administrative Agent and Lenders that all of the representations and warranties contained in Section 4 of the Second Amendment are true and correct in all material respects as of the date hereof, with the same force and effect as if made on the date hereof, and that no Postpetition Default or condition, event or act which with the giving of notice or lapse of time, or both, would constitute a Postpetition Default exists and is continuing on this date, unless noted below (if such a condition, event or act is so noted, there shall also be noted below the nature, period of existence thereof and the action which the Borrower is taking or propose to take with respect thereto).


                  **AGE REFINING, INC.**


                  By:     _____
                  Name: _____
                  Title:  _____

70784134.1

**EXHIBIT B**
**POSTPETITION COMMITMENTS**

| Lender | Postpetition Commitment | Postpetition Percentage |
|---|---|---|
| JPMorgan Chase Bank, N.A. | $[35,000,000] | 100% |

70784134.1

# EXHIBIT C
## DEFAULTS EXISTING ON PETITION DATE

# EXHIBIT D
# BUDGET

[Attached]