# **EXHIBIT B**

# **Exit Facility Term Sheet**

 

## Summary of Terms and Conditions of the First Lien Senior Exit Facility of Crescent Resources, LLC

Set forth below is a Summary of the principal terms and conditions of the first lien Senior Exit Facility and the documentation related thereto. This Summary describes the principal terms and conditions of the proposed new Senior Exit Facility described in the Plan. This Summary of the principal terms and conditions of the first lien senior exit facility is not meant to be, nor shall it be construed as an attempt to, describe all of, or the specific phrasing for, the provisions of the Financing Documents. Rather, it is intended only to outline certain principal terms to be included in the Senior Exit Facility. This term sheet is non-binding and the proposals contained herein are subject to, among other things, the negotiation, documentation and execution of definitive documentation, including the Financing Documents. Only execution and delivery of definitive documentation acceptable to the Agent relating to the transactions shall result in any binding or enforceable obligations of any party relating to the transactions, including the Financing Documents.

| | |
|---|---|
| Borrower: | Crescent Resources, LLC, as reorganized as of the Effective Date in accordance with the Plan (the "**Borrower**"). |
| Guarantors: | The Senior Exit Facility will be guaranteed, on a joint and several basis, by all existing and future direct and indirect subsidiaries of the Borrower (the "**Subsidiaries**") subject to exceptions to be agreed, and by any holding company formed to hold the Borrower's equity securities ("**Holdings**" and, together with the Subsidiaries, the "**Guarantors**"). The Guarantors and the Borrower are collectively referred to herein as the "**Credit Parties**". |
| Agent: | Deutsche Bank Trust Company Americas, an affiliate thereof or any other entity designated by UBS Securities. |
| Collateral Agent: | To be determined. |
| Co-Lead Arrangers: | UBS Securities LLC ("**UBS Securities**") and Aladdin Capital LLC ("**Aladdin**"). |
| Lenders: | UBS AG, Stamford Branch, any of its affiliates, and/or a syndicate of banks and other financial institutions to be arranged by the Co-Lead Arrangers. |
| Senior Exit Facility: | A $125 million first lien senior exit term credit facility to be funded upon emergence from bankruptcy. The Senior Exit Facility may, in |

UBS Investment Bank is a business group of UBS AG
UBS Securities LLC is a subsidiary of UBS AG
Member SIPC. Member New York Stock Exchange and other principal exchanges.

the discretion of the Agent upon further due diligence, be structured as a delayed draw term loan. The Senior Exit Facility shall include a cash-collateralized synthetic letter of credit sub-facility of up to $25 million (the "**L/C Facility**"). The Senior Exit Facility will contain regularly scheduled minimum amortization to be determined payable on a quarterly basis.

Maturity:	The Senior Exit Facility shall terminate upon the fourth anniversary from the Closing Date.

Cash Interest Rates:	At the Borrower's option, subject to certain conditions in the executed Financing Documents, Prime Rate or LIBOR (each as customarily defined by the Agent) with a Prime and LIBOR Floor of 5.00% and 2.50%, respectively, plus an applicable margin as set forth below:

| Applicable Margin for Prime Rate Loans | Applicable Margin for LIBOR Loans |
|---|---|
| 6.00% | 7.50% |

Interest shall be payable monthly on all Prime Rate loans and interest on LIBOR loans shall be payable on the last day of the interest period therefor (unless such interest period is more than three months, in which case interest shall be payable quarterly).

At the election of Agent, upon the occurrence and during the continuance of an event of default or a payment default, interest will accrue on the amount of any loan or other amount outstanding under the Senior Exit Facility at a rate of 2.0% per annum plus the rate otherwise applicable to the loans under the Senior Exit Facility and will be payable on demand.

Fees:	The Borrower shall pay to the Co-Lead Arrangers, for their own accounts, the other fees and payments set forth in the Fee Letter, dated as of March 25, 2010 (the "**Fee Letter**"), by and between the Co-Lead Arrangers and the Borrower.

Mandatory Prepayments:	Unless the Agent directs otherwise (in which case amounts that would otherwise be applied in mandatory prepayment of the Senior Exit Facility must be used by the Reorganized Debtors in the ordinary course of business and for their regular business purposes), mandatory prepayments of the Senior Exit Facility will be required in amounts equal to (A) 100% of cash balances in excess of $100 million measured on December 31 and June 30, respectively

(excluding any cash received from or resulting from any equity investments) ("**Excess Cash**"), (B) 100% of the insurance or condemnation proceeds received in connection with a casualty event, condemnation or other loss (subject to customary reinvestment rights to be agreed), (C) in respect of asset sales outside of the ordinary course of business (to be defined by agreement), (i) 50% of net cash proceeds of up to $50 million in the aggregate and (ii) 100% of net cash proceeds of $50 million or more in the aggregate, (D) 100% of the amount of any investment of cash or other property into a joint venture or other non-Credit Party (in the case of property other than cash, in an amount equal to the fair market value of such property), except any investment made with proceeds received from or resulting from any equity investments and (E) 33-1/3% of any cash investment other than as contemplated by the proceeding clause (D), except for any investment made with proceeds received from or resulting from any equity investments. Mandatory prepayments will be applied to principal installments in direct order of maturity and may not be reborrowed.

Optional Prepayments: The Senior Exit Facility may be prepaid in minimum amounts to be agreed upon. Optional prepayments shall be applied to principal installments in direct order of maturity and may not be reborrowed.

Prepayment Fee: All optional prepayments of principal shall be accompanied by a prepayment fee equal to (a) if such prepayment is made on or prior to the first anniversary of the Closing Date, 2% of the principal prepaid and (b) if such prepayment is made after the first anniversary of the Closing Date and on or prior to the second anniversary of the Closing Date, 1% of the principal prepaid.

Priority/Security: The obligations of each Credit Party in respect of the Senior Exit Facility shall be secured by a perfected first priority (subject to certain existing liens and liens permitted by the Financing Documents including in respect of approximately $[60] million of existing project-level debt as described in the Plan) security interest in substantially all of its present and future tangible and intangible assets (including, without limitation, accounts receivable, inventory, fixed assets, intellectual property, real property, licenses, permits and capital stock/equity of subsidiaries and joint ventures with exceptions to be agreed) (the "**Collateral**"). The Collateral will be pledged for the equal and ratable benefit of the Lenders.

Documentation relating to security will, to the extent required by the Co-Lead Arrangers, be governed by local law as necessary to create or perfect the security interests intended to be granted thereunder or otherwise fully benefit from the granting of such security interests.

The Administrative Agent will enter into an intercreditor agreement (the "**Intercreditor Agreement**") with the agent under the Second Lien Facility, governing their relative rights and priorities, which Intercreditor Agreement shall be in form and substance satisfactory to the Agent in all respects.

Use of Proceeds

The proceeds of the Senior Exit Facility shall be used (i) to satisfy in full the obligations of the Credit Parties under the DIP Credit Facility, (ii) to finance the Reorganized Debtors' general working capital requirements and business operations, (iii) to pay allowed administrative expenses and allowed claims in accordance with the Plan and (iv) to pay fees, costs and expenses associated with the Senior Exit Facility.

Financing Documents:

The Financing Documents shall consist of such loan and security documents as are customary for comparable senior secured exit financings or as the Co-Lead Arrangers may require, which documents shall include, without limitation, conditions, representations, warranties, affirmative and negative covenants, collateral reporting requirements, financial covenants, financial reporting requirements, events of default, remedies, yield protection, indemnification and expense reimbursement relating to the Credit Parties customary for a transaction of this type and consistent with this summary of terms and conditions and shall also contain such other terms and conditions to be agreed by the parties (subject to exceptions and carve-outs to be agreed upon), including, without limitation:

*Conditions to Funding*:

The availability of the Senior Exit Facility will be subject to the Agent's and Lenders' satisfaction or written waiver of conditions that are customary for loans of this type or otherwise agreed by the parties including, without limitation, the following (the date of such satisfaction of all such conditions, the "**Closing Date**"):

(a) there shall not have occurred any event, development or circumstance since December 31, 2009 (subject to certain exceptions acceptable to the Agent), which has had, or could reasonably be expected to have, a material adverse effect on or change in the financial condition, business, management, results of operation, prospects, assets or liabilities of the Borrower or any Guarantor and its subsidiaries taken as a whole,

(b) each Credit Party shall have executed and delivered the Financing Documents (including the Intercreditor Agreement) in form and substance satisfactory to the Agent and Lenders,

(c) the Agent shall have received a copy of the final order confirming

4

the Plan, which order shall be in form and substance reasonably satisfactory to the Agent in all respects but satisfactory in all respects relating to the Senior Exit Facility (the "**Confirmation Order**"), entered by the Bankruptcy Court after due notice to all creditors and other parties-in-interest and as entered on the docket of the Clerk of the Bankruptcy Court. The Confirmation Order shall authorize the financing and senior liens under the Senior Exit Facility. The Confirmation Order shall be in full force and effect and shall not have been modified, reversed, stayed or vacated,

(d) any amendments to the Plan and any Plan Supplement shall be in form and substance reasonably satisfactory to the Agent and its counsel, <u>provided</u> that any such amendments, Plan Supplement or related Plan document affecting the governance, management or capital structure of the Borrower or any Guarantor shall be in form and substance satisfactory to Agent and its counsel in their discretion. The Plan shall be consummated and effective and all agreements and undertakings of the parties thereunder to be performed by such time shall have been satisfied and performed. The Confirmation Order shall be final, valid, subsisting and continuing and all conditions precedent to the effectiveness of the Plan shall have been fulfilled (or waived in accordance with the terms of the Plan). The Agent shall have received evidence, in form and substance reasonably satisfactory to the Agent, that all consents, approvals or withholding of objections, appropriate or necessary to consummate the Plan and the Senior Exit Facility have been obtained,

(e) no motion, action or proceeding shall be pending against any Credit Party by any creditor or other party-in-interest in the Bankruptcy Court or any other court of competent jurisdiction which adversely affects or may reasonably be expected to adversely affect in any material respect (x) the Plan, (y) the post-consummation business of the Credit Parties or (z) the Senior Exit Facility,

(f) the Confirmation Order shall have been entered by no later than June 30, 2010, and the satisfaction or waiver of each of the conditions to the Senior Exit Facility, and the closing of the Senior Exit Facility shall have occurred by no later than the Effective Date of the Plan,

(g) the Borrower will provide an updated appraisal confirming the enterprise value of the Reorganized Debtors as described in the Plan,

(h) minimum liquidity (*i.e.*, unrestricted cash and cash equivalents) of $15 million immediately prior to the Closing Date,

(i) the terms and conditions of Second Lien Facility shall be

acceptable to the Co-Lead Arrangers,

(j) the absence of any continuing default or event of default under the Financing Documents,

(k) the accuracy of all representations and warranties under the Financing Documents,

(l) there being no legal bar to the Lenders making the loans,

(m) all requisite consents, approvals and opinions (in form and substance reasonably satisfactory to the Agent) shall have been received,

(n) evidence satisfactory to the Agent of payment and satisfaction in full of the DIP Credit Facility and release of all related liens and claims, and

(o) evidence satisfactory to the Agent of the release of all liens under the Prepetition Credit Agreement.

|  |  |
|---|---|
| ***Covenants:*** | Usual and customary affirmative and negative covenants for facilities and transactions of this type, including, without limitation, monthly reporting, limitations on indebtedness (with up to $250 million of unsecured recourse debt of any Credit Parties to be permitted), liens, fundamental changes, non-ordinary course asset sales (to be defined by agreement), cash and non-cash investments (subject to baskets to be agreed), sales and leasebacks, negative pledges, leases, restricted payments and transactions with affiliates, in each case with exceptions for the project-level debt as described in the Plan and other exceptions to be agreed. |

To include, without limitation, the following financial covenants (each to be defined in the Financing Documents):

(i) Maximum Total Loan-to-Value (to be defined as no less than 30%;
(ii) Minimum Liquidity of $25 million; and
(iii) Limitations on "hard costs" (to be defined); however, to be set at no less than a 15% cushion level to the Borrower's most recent business plan, which may be updated by the Borrower with the consent of the Agent (not to be unreasonably withheld).

|  |  |
|---|---|
| ***Events of Default:*** | Events of default will be subject to materiality levels, default triggers, cure periods and/or exceptions to be negotiated and reflected in the Financing Documents and will include usual and customary terms for |

|  | these types of facilities, and such additional events of default as the Agent shall deem appropriate. |
|---|---|
| Indemnities: | The Co-Lead Arrangers, Agent and the Lenders (and their affiliates and their respective officers, directors, employees, advisors and agents) will be indemnified and held harmless against, any loss, liability, cost or expense incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof (except to the extent determined in a final non-appealable judgment by a court of competent jurisdiction to have resulted primarily from the bad faith, gross negligence or willful misconduct of the indemnified party). |
| Borrower Identification – USA Patriot Act Notice: | The Co-Lead Arrangers hereby notify the Borrower that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56, signed into law October 26, 2001) (the "**Act**") and the Co-Lead Arrangers' policies and practices, the Co-Lead Arrangers are required to obtain, verify and record certain information and documentation that identifies the Borrower, which information includes the name and address of the Borrower and such other information that will allow the Co-Lead Arrangers to identify the Borrower in accordance with the Act. In that connection, the Co-Lead Arrangers may also request corporate formation documents, or other forms of identification, to verify information provided. |
| Expenses: | Regardless of whether a transaction is consummated and in accordance with the Fee Letter, the Borrower shall be responsible for (i) all costs and expenses of the Co-Lead Arrangers (including without limitation, the reasonable fees, costs and expenses of counsel, and independent appraisers and consultants retained by the Co-Lead Arrangers incurred in connection with the due diligence investigation and travel, courier, reproduction, printing and delivery expenses), and of the Lenders and the Agent, in each case of this clause (i) associated with the documentation, negotiation, closing and syndication of the transactions contemplated by or in connection with the Senior Exit Facility, (ii) without limitation of the preceding clause (i), all costs and expenses in connection with the creation and perfection of the liens to be provided as security for the Senior Exit Facility, including title investigations, lien searches and the like and (iii) all costs and expenses in connection with the preparation, execution and delivery, administration, amendment, waiver or modification (including proposed amendments, waivers or modifications) of the Financing Documents contemplated hereby. In addition, all out-of-pocket expenses (including but not limited to legal fees and expenses) of the Lenders and the Agent for workout proceedings, enforcement costs and documentary taxes associated with the Senior Exit Facility are to |

| | be paid by Borrower. |
|---|---|
| <u>Assignments and Participations</u>: | The Lenders shall be permitted to assign all or a portion of their loans and commitments subject (so long as no Event of Default shall have occurred and be continuing) to the Borrower's consent, not to be unreasonably withheld or delayed, with respect to any unfunded portions of the Senior Exit Facility. The Lenders shall also be permitted to sell participations in their loans. |
| <u>Voting</u>: | Subject to certain exceptions to be agreed, the Agent will act at the instruction of the Lenders having at least 50% of the outstanding or committed principal amount of the Senior Exit Facility. |
| <u>Documentation; Governing Law</u>: | The terms set forth herein will be subject to the negotiation, execution and delivery of definitive Financing Documents consistent with this term sheet and satisfactory to the Agent (which such agreements shall contain such additional provisions as may be necessary or desirable, as determined by the Agent in its sole discretion, to comply with, or optimize the application of or results under, any applicable procedural or other legal requirements (or foreign equivalent), whether related to laws governing bankruptcy or insolvency or any other laws. Except as otherwise required by the Agent, all documentation shall be governed by the internal laws of the State of New York (except for such documentation related to security which the Agent determines should be governed by local law). Each party to the Financing Documents will waive the right to trial by jury and will consent to the exclusive jurisdiction of the state and federal courts located in The City of New York. |